# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DEMETRIUS HARRIS, #352-534 a/k/a DEMETRIUS DIGGS <br> Plaintiff | * <br> * Civil Action Case No. RDB-09-2600 |
| v | * |
| OFFICER COLE, et al. <br> Defendants | * |

## MEMORANDUM OPINION

Pending is a civil rights complaint for damages and injunctive relief pursuant to 42 U.S.C. § 1983 filed pro se by Demetrius Harris ("Harris").[1] Counsel for Defendant Kevin McDonald, P.A.,[2] has filed a Motion to Dismiss or for Summary Judgment supported by an affidavit and verified exhibits.[3] Harris has filed a response. McDonald relies on materials beyond the scope of the Complaint, and his Motion shall be reviewed as requesting summary judgment pursuant to Fed R. Civ. P. 56. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, Defendant Kevin McDonald's Motion for Summary Judgment IS GRANTED.

## PLAINTIFF'S CLAIMS

These claims arose while Harris was an inmate in the Maryland Correctional Training Center ("MCTC"). Harris claims that McDonald 1) failed to promptly order an x-ray of his ribs

---

[1] Plaintiff filed the Complaint under the name "Demetrius Diggs." Plaintiff also goes by the name "Demetrius Harris," the name under which he is registered with the Division of Correction (DOC). While this case has been pending, several mailings to Plaintiff were returned to the Clerk due to his use of both names. Accordingly, the Clerk will amend the docket to reflect Plaintiff's name as "Demetrius Harris a/k/a Demetrius Diggs." Efforts by court staff to confirm Plaintiff's address in light of returned mailings indicate that Plaintiff was released from prison on July 6, 2010. Although Plaintiff was ordered to maintain a current address with the Court, Paper No. 4, he has not provided his current address since release. As such, his claim is dismissible pursuant to Local Rule 102.1.b.iii (D. Md. 2010). At the request of the Court, the Maryland Attorney General's Office has provided the emergency address Harris has on file with the DOC. The emergency address is Plaintiff's mother's address. This Memorandum Opinion and the accompanying Order will be sent to that address.

[2] McDonald is an employee of state medical contractor Correctional Medical Services, Inc.

[3] Defendants Sergeant Charles Wade, C.O. II Coyd Cole, C.O. II Earl Ritchie, C.O. II Scott Reese, and C.O. II Duane Bair, by their also counsel, also have filed a motion for dismissal or summary judgment. Their dispositive motion shall be considered in a separate Memorandum Opinion and Order to be entered at a later date.

after an alleged assault by correctional officers, and 2) his "numerous medical slips" were unaddressed. Complaint p 4; Paper No. 9.

## BACKGROUND

Verified and uncontroverted records submitted by McDonald show the following. On January 24, 2009, Harris was examined by Wanda Diaz, R.N., at the prison dispensary as a "walk-up"[4] patient for a lump on his left breast, which according to Harris, resulted from an assault by correctional officers on the previous night. Paper No. 24, McDonald affidavit, Exhibit A, p 2; *see also* Exhibit B, pp 2-3. Examination found slight swelling to Plaintiff's left eye and temple, swelling of his left breast, but no bruising on his chest, and a slight redness and swelling on the knuckles of his second and middle fingers of his right hand. Paper No. 24, Exhibit B, pp. 2-3. Nurse Diaz gave Plaintiff ice for the swelling and 24 tablets of ibuprofen (Motrin). Plaintiff stated that he had previous surgery on his left breast. *See id.*

Harris presented no further complaints until March 24, 2009, when he was brought to the dispensary for chest pain on his left side, difficulty breathing, and a sore throat. Harris rated his pain as 6 on a scale of 10. Nurse Charity Inyama examined Harris. She observed his left breast was tender to the touch, his temperature was 100.1 degrees, and his heart rate (pulse) was irregular at 126 beats per minute. Paper No. 24, Exhibit B, p. 4. The rest of the exam was normal. Harris exhibited no difficulty breathing nor complained of rib pain. His throat was not red or swollen.

Nurse Inyama gave Harris Tylenol for his fever and notified the physician on-call. The physician on call ordered a physician evaluation for Plaintiff that morning. When Nurse Inyama checked Plaintiff's vital signs later that morning, his temperature had decreased to 99.7 degrees, his pulse decreased to 96, and his pain level dropped to a 3 out of 10. Harris informed Nurse

---
[4] Inmates are escorted to the dispensary as "walk-up" patients for complaints or injuries that should not wait for a regularly scheduled appointment. It is similar to "being evaluated in the Emergency Department of a hospital." Paper No. 24, McDonald affidavit, Exhibit A, p. 2 n. 1.

Inyama that he felt better and wanted to return to his cell. Accordingly, Harris was discharged. *See id.*

Harris did not present any medical complaints until April 24, 2009, when he was examined after an altercation with correctional officers. Paper No. 24, Exhibit B, p 5. At that time, Sara Williams, LPN, observed and cleaned a small bruise on Plaintiff's right arm. The rest of the examination was normal. *See id.*

On May 24, 2009, Harris submitted three Sick Call Request Forms in which he complained of itchy and runny eyes, sneezing, knee pain, and rib pain worsened from being cuffed from behind. Harris asserted that he had submitted "numerous sick calls about [his] rib hurting" and "haven't heard anything since January when the PA seen me in [sic] put me in for an x-ray." Paper No. 24, Exhibit B, p. 8.[5] McDonald, however, attests that Plaintiff's medical chart contains no record that he or any other physician's assistant evaluated Harris in January of 2009. Paper No. 24, Exhibit A, p. 4, ¶ 8. Further, McDonald attests that the medical records do not contain an x-ray order from January of 2009. *See id*; *see also* Exhibit B, pp. 6-8.

On June 12, 2009, Daniel Baumgardner, R.N. examined Harris, gave him Motrin and analgesic balm for pain, scheduled him for an appointment with a physician's assistant, and noted on the medical chart that he would research whether an x-ray had been ordered. Paper No. 8, Exhibit B, p. 8. Harris was scheduled for an appointment with McDonald on July 1, 2009. Harris and other inmates on segregation were not brought to the clinic on that day and the appointment was rescheduled for July 31, 2009. Paper No. 24. Exhibit A, p. 5, ¶ 10.

On July 31, 2009, McDonald, examined Harris for left knee pain. During examination, McDonald felt a small cyst on Harris's left anterior fifth rib near the nipple line. As treatment, McDonald prescribed Naproxyn, a non-steroidal anti-inflammatory medication for discomfort and ordered x-rays of Harris's left knee and ribs. In his affidavit, McDonald declares that

---

[5] In a footnote to his affidavit, McDonald indicates that Medical Records Department staff conducted a "thorough search of Plaintiff's medical files and did not locate any Sick Call Request Forms dated between January 24, 2009 and May 24, 2009." Paper No. 24, Exhibit A, p. 4, n. 2.

according to the medical records, "the July 31 x-ray requisition was the first and only time I or any other medical provider ordered x-rays for Diggs [Harris] between January and August 2009." Paper No. 24, Exhibit A, p. 5, ¶ 10.

On August 4, 2009, x-rays were taken of Plaintiff's chest and knee. The results revealed no new or old rib fractures. The knee x-ray was negative. Paper No. 24, Exhibit A, p. 5, ¶ 11; Exhibit B, p. 14.

On August 6, 2009, Harris filed a Sick Call Request Form complaining that his ribs hurt every time he placed his arms behind his back. When McDonald evaluated him on August14 2009, Harris requested a "cuff-in-front" (CIF) order. McDonald informed Harris that there was no medical indication for a CIF order, and assured him that the x-rays showed no rib fractures. Exhibit A, p. 5, ¶ 11.

On November 11, 2009, Harris was escorted to the dispensary as a "walk-up" patient, for pain in his left shoulder and wrist. According to Harris, a correctional officer grabbed and twisted his arm out of the "feed-up" slot. Nurse Daniel Baumgardner's examination revealed abrasions to the left wrist and left upper arm and minimal swelling in the left wrist area. Defendant McDonald examined Harris later that morning. Noting that Harris had restricted range of motion in all planes due to pain, McDonald ordered an x-ray of Plaintiff's left shoulder, wrote a fourteen-day CIF order, and prescribed ibuprofen for pain. McDonald instructed Harris to follow-up with medical staff if the condition worsened or did not improve within fourteen days. Harris presented no complaints about rib pain. Paper No. 24, Exhibit B, pp. 19-22.

On November 13, 2009, Plaintiff's left shoulder was x-rayed. The results revealed no evidence of an acute fracture, dislocation, or subluxation (partial dislocation), and no disruption in shoulder alignment. Paper No. 24, Exhibit B, p. 21.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

Where the parties present matters outside the pleadings and the Court considers those matters, the motion is treated as one for summary judgment. *See Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997). Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

## ANALYSIS

In order to state a constitutional claim for denial of medical care, Plaintiff must demonstrate that Defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

### I. Plaintiff's Claim of Failure to Promptly Order X-ray

It is undisputed that Plaintiff's medical records contain no evidence that an x-ray was ordered for him in January of 2009, by McDonald or any other physician's assistant. Further, even when Plaintiff's claims are evaluated in the light most favorable to him, he fails to show that McDonald deliberately disregarded a substantial risk of serious harm or rendered treatment so "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. No genuine issue as to any material fact is presented; McDonald is entitled to judgment in its favor as a matter of law as to this claim.

## II. Plaintiff's Claim that Medical Slips were not Addressed

Harris submitted three sick call complaint forms. His complaints were addressed by medical providers, including McDonald. Harris was examined and prescribed medication. Plaintiff's assertion that an x-ray had been ordered for him in January of 2009, as contained in his sick call form, was researched by McDonald. No January x-ray order was found by medical records staff. After examining Harris on July 31, 2009, McDonald ordered an x-ray of Plaintiff's ribs and no injury or fracture was found.

Viewing these facts and reasonable inferences in the light most favorable to Harris, Plaintiff fails to show that McDonald's acts (or failures to act) amounted to deliberate indifference to his serious medical needs or that the treatment provided was so grossly incompetent or inadequate as to satisfy the standard for constitutionally inadequate medical care. Accordingly, Defendant McDonald is entitled to summary judgment.

## CONCLUSION

Considering the facts and all reasonable inferences in the light most favorable to Harris, the Court finds no genuine issue as to any material fact is presented, and McDonald is entitled to a judgment as a matter of law. Summary Judgment shall be entered in favor of McDonald and against Harris by separate Order.

August 2, 2010
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE